[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this medical malpractice action, the remaining defendant Iraj Rahmati, M.D. moves for summary judgment, on the grounds that, as a matter of law, the plaintiff cannot prove that Rahmati was negligent.
The plaintiff brought this medical malpractice action seeking damages for the defendant's failure to diagnose and treat the condition of hemangioma[1] on the infant plaintiff's right lower eyelid. The action began on July 12, 1999; an amended complaint was filed on December 19, 1999. On October 20, 2000, the plaintiff disclosed three expert witnesses: William Potter M.D., Jonathan Zirn, M.D. and David Leffell, M.D. In that disclosure, the plaintiff represented the following as to the substance of the facts and opinions to which the three experts would testify:
 It is anticipated that the doctors will offer their opinions as to the medical services provided by the defendant Iraj Rahmati, M.D., failed to meet that CT Page 7263 degree of care, skill, and diligence required of him in the treatment of patients with signs and symptoms of hemangioma such as Brittany Campagnale.
 Specifically, Dr. Rahmati failed to timely diagnose the condition of hemangioma, and in fact made an incorrect diagnosis of a cyst. The failure to timely diagnose the condition was the direct and proximate cause of a delay in treatment. The delay in treatment resulted in a poorer outcome than would have been achieved with timely diagnosis and treatment. Such damage includes pressure on the eyeball causing it to misshape and causing blurred vision, inability to close the eye causing tearing and misshapen upper eyelid, increased risk for amblyopia, and a poorer cosmetic appearance causing the need for future cosmetic surgery.
(Plaintiff's Disclosure of Expert Witnesses of 10/19/00.)
The defendants deposed Dr. Potter on February 15, 2001, Dr. Leffell on February 26, 2001, and Dr. Zirn on March 15, 2001. The trial of this case is scheduled to begin on June 12, 2001.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Appleton v. Board ofEducation, 254 Conn. 205, 209 (2000); Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 297 (2000); Miles v. Foley, 253 Conn. 381, 385 (2000). A "material" fact is one which will make a difference in the outcome of the case. Morasciniv. Commissioner of Public Safety, 236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist.Michaud v. Gurney, 168 Conn. 431, 433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Wilson v.New Haven, 213 Conn. 277, 279 (1989); Mac's Car City, Inc. v. AmericanNational Bank, 205 Conn. 255, 261 (1987). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. Danbury Hospital,252 Conn. 193, 201 (2000).
"Although the party seeking summary judgment has the burden of showing CT Page 7264 the nonexistence of any material fact . . . [the nonmovant] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with . . . evidence disclosing the existence of such a disputed issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Internal quotation marks omitted.) Home InsuranceCo. v. Aetna Life Casualy Co., 235 Conn. 185, 202 (1995).
The defendant argues that because none of the three experts will testify to the standard of care or any deviation therefrom, the plaintiff cannot prove that the defendant committed malpractice. The memorandum in support of the motion relies on the deposition testimony of each of the witnesses. See Schratwieser v. Hartford Casualty Ins. Co.,44 Conn. App. 754, 756 n. 1, cert. denied, 241 Conn. 915 (1997) (it is not "improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment"). The plaintiff's opposing memorandum referred to the deposition testimony and was accompanied by an affidavit of Christopher Campagnale.[2]
It is well established that in most medical malpractice cases expert testimony is required to establish the defendant's negligence.
 "Except in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of want of care[,] . . . the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician . . . and that the defendant failed to conform to that standard of care.
(Citations omitted; internal quotation marks omitted.) Doe v. YaleUniversity, 252 Conn. 641, 687 (2000), citing Barrett v. DanburyHospital, 232 Conn. 242, 252 (1995).
The exceptions to this general rule are set forth in Esposito v.Schiff, 38 Conn. App. 726, 730 (1995):
 An exception to the general rule with regard to expert medical opinion evidence is when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay CT Page 7265 jury can form a reasonable belief. . . . Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person.
(Citations omitted; internal quotation marks omitted.)
Here, the facts alleged and the deposition testimony show that none of these exceptions applies to eliminate the need for expert testimony. According to the plaintiff's expert Dr. Potter, the infant plaintiff's condition of capillary hemangioma is not common; the condition is unusual. (See Potter Deposition of 2/15/01 at 21-22.) A review of all three expert deposition transcripts reveals no claim of gross negligence nor any strong probability as to the causation of any injury or illness from the alleged negligence.
The court has read the entire deposition transcript of each of the experts disclosed by the plaintiff. Dr. Potter, a pediatric ophthalmologist, testified as follows on the plaintiff's disclosure of expert:
 Q Do you understand that that document has disclosed you as an expert witness on behalf of Brittany Campagnale?
A I do understand that.
 Q And do you agree with the substance of the opinions That you are purported to offer?
 A Yes. The document states that, "Drs. Potter, Zirn, and Leffell will offer opinions as to permanent disability slash impairment."
(Potter Deposition of 2/15/01 at 25.)
He then testified,
 A. . . . In reviewing the records, I appreciate the decisions that were made, you know, on behalf of the patient, in this case Brittany, when I saw her, but I can't say at this time that I have an opinion regarding whether Dr. Rahmati has actually breached any care issues of malpractice here.
(Emphasis added.) (Potter Deposition of 2/15/01 at 26.) CT Page 7266
Dr. Zirn, a dermatologist, testified regarding the standard of care as follows,
 Q At any point in time did you offer to Attorney Jacques or to another attorney an opinion indicating that Dr. Rahmati, who is an ophthalmologist in New Milford and my client, had departed from the standard of care in his treatment of Brittany Campagnale?
A No.
 Q Have you formed any opinion, to a reasonable degree of medical certainty, as to whether or not Dr. Rahmati's treatment of Brittany Campagnale was within or represented a departure from the standard of care?
A I'm sorry. Can you repeat the question?
 Q I'll try. Have you ever, up to the present time, formed or offered an opinion as to whether or not Dr. Rahmati breached the standard of care in his treatment of Brittany Campagnale?
A No. I can only speak to the treatment that I provided.
(Emphasis added.) (Zirn Deposition of 3/15/01 at 14-15.)
Finally, Dr. Leffell, a professor of dermatology at Yale, testified as to the standard of care for the treatment of hemangiomas as follows:
 Q Have you formed an opinion, Doctor, to a reasonable degree of medical probability, as to whether or not the initial diagnosis of a chalazion is indicative of a departure from the standard of care on Dr. Rahmati's part?
 A In view of the clinical findings, which are indicated in Dr. Rahmati's words as a "reddish inflamed lesion," I would say that that is quite consistent with a chalazion as part of the differential diagnosis, and as a result is not a departure.
 Q Recognizing of course, Doctor, that you are not and don't claim to be an ophthalmologist, have you formed, based upon your review in this case, or expressed to anyone the opinion that Dr. Rahmati departed from the standard of care in his treatmentCT Page 7267 of Brittany Campagnale?
A No. I have not expressed that to anyone.
(Emphasis added.) (Leffell Deposition of 2/26/01 at 11-12.)
The plaintiff has filed no counter-affidavit that raises a genuine issue of fact as to the standard of care testimony. See Home InsuranceCo. v. Aetna Life Casualty, supra, 235 Conn. 202. It is thus clear to this court that the plaintiff will be unable to produce an expert witness at trial to testify that the defendant breached the applicable standard of care. Accordingly, the defendant's motion for summary judgment is granted. See Stowe v. McHugh, 46 Conn. App. 391, 394-95, cert. denied,243 Conn. 932 (1997); Guzze v. New Britain General Hospital,16 Conn. App. 480, 484-85, cert. denied, 209 Conn. 823 (1988).
Judgment may enter in favor of the defendant. DiPentima, J.